McGREGOR W. SCOTT
United States Attorney
ANDRÉ M. ESPINOSA
AMY S. HITCHCOCK
TANYA B. SYED
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RONALD STEVEN SCHOENFELD,<br><br>Defendant. | CASE NO. 2:20-CR-150-KJM<br><br>PLEA AGREEMENT<br><br>DATE: August 31, 2020<br>TIME: 9:00 AM<br>COURT: Hon. Kimberly J. Mueller |

## I.  INTRODUCTION

**A.   Scope of Agreement.**

The Information in this case charges the defendant with violating 18 U.S.C. § 371 – Conspiracy to Commit Honest Services Fraud ("Count One") and 18 U.S.C. § 1956 –Monetary Laundering ("Counts Two through Three"). This document contains the complete Plea Agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This Plea Agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

**B.   Court Not a Party.**

The Court is not a party to this Plea Agreement. Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all facts and circumstances concerning the criminal activities of defendant, including activities which may not have been charged in

PLEA AGREEMENT                           1

the Information.  The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this Plea Agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all of the obligations under this Plea Agreement.  The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will receive.

## II.   DEFENDANT'S OBLIGATIONS

### A.   Guilty Plea.

The defendant will plead guilty to Count One – 18 U.S.C. § 371 (Conspiracy to Commit Honest Services Fraud).  The defendant agrees that he is in fact guilty of these charges and that the facts set forth in the Factual Basis for Plea attached hereto as Exhibit A are accurate.

The defendant agrees that this Plea Agreement will be filed with the Court and become a part of the record of the case.  The defendant understands and agrees that he will not be allowed to withdraw his plea should the Court not follow the government's sentencing recommendations.

The defendant agrees that the statements made by him in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a guilty plea pursuant to this Agreement.  The defendant waives any rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410, to the extent that these rules are inconsistent with this paragraph or with this Agreement generally.

### B.   Waiver of Indictment.

The defendant acknowledges that under the United States Constitution he is entitled to be indicted by a grand jury on the charges to which he is pleading guilty and that pursuant to Fed. R. Crim. P. 7(b), he agrees to waive any and all rights he has to being prosecuted by way of indictment to the charges set forth in the Information.  The defendant agrees that at a time set by the Court, he will sign a written waiver of prosecution by Indictment and consent to proceed by Information

rather than by Indictment.

### C. Waiver of Statue of Limitation.

The defendant understands that he has a right under 18 U.S.C. § 3282 to have the criminal charges resolved by this Agreement brought within 5 years of the commission of the offenses. The defendant acknowledges that, through counsel, he previously requested the opportunity to confer with the United States and conduct investigation and legal research prior to any charges being filed in this matter and in furtherance of a potential pre-indictment resolution of possible criminal charges. The defendant further acknowledges that, through counsel, he previously executed written agreements tolling the otherwise applicable statute of limitations in this matter. The defendant expressly waives the statute of limitations as a defense to the criminal charges being resolved by this Plea Agreement.

### D. Restitution.

The Mandatory Victim Restitution Act requires the Court to order restitution to the victims of certain offenses. The defendant agrees that his conduct is governed by the Mandatory Restitution Act pursuant to 18 U.S.C. § 3663A(c)(1)(A)(ii) and agrees to pay the full amount of restitution to all victims affected by this offense, including, but not limited to, the victims covered in the factual basis and other victims as a result of the defendant's conduct for the offenses charged from the periods through in or about August 2006 through in or about February 2015. The amount of restitution has not yet been determined, but may be up to $1,476,295.15. The government's position is that the amount of restitution to be paid to the victim is $1,476,295.15. The defendant may argue to the Court that that he believes the restitution amount is otherwise, pursuant to the relevant legal authorities.

Restitution payments shall be made by cashier's or certified check made payable to the Clerk of the Court.

The defendant further agrees that he will not seek to discharge any restitution obligation or any part of such obligation in any bankruptcy proceeding.

### E. Fine.

The defendant reserves the right to argue to Probation and at sentencing that he is unable to pay a fine, and that no fine should be imposed. The defendant understands that it is his burden to affirmatively prove that he is unable to pay a fine, and agrees to provide a financial statement under penalty of perjury

to the Probation Officer and the government in advance of the issuance of the draft Presentence Investigation Report, along with supporting documentation. The government retains the right to oppose the waiver of a fine. If the Court imposes a fine, the defendant agrees to pay such fine if and as ordered by the Court, up to the statutory maximum fine for the defendant's offense.

**F.     Special Assessment.**

The defendant agrees to pay a special assessment of $100 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing. The defendant understands that this Plea Agreement is voidable at the option of the government if he fails to pay the assessment prior to that hearing.

**G.     Violation of Plea Agreement by Defendant/Withdrawal of Plea.**

If the defendant violates this Plea Agreement in any way, withdraws his plea, or tries to withdraw his plea, this Plea Agreement is voidable at the option of the government. If the government elects to void the Agreement based on the defendant's violation, the government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein. A defendant violates the Plea Agreement by committing any crime or providing or procuring any statement or testimony which is knowingly false, misleading, or materially incomplete in any litigation or sentencing process in this case, or engages in any post-plea conduct constituting obstruction of justice. Varying from stipulated Guidelines application or agreements regarding arguments as to 18 United States Code Section 3553, as set forth in this Agreement, personally or through counsel, also constitutes a violation of the Plea Agreement. The government also shall have the right (1) to prosecute the defendant on any of the counts to which he pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this Plea Agreement; and (3) to file any new charges that would otherwise be barred by this Plea Agreement. The defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge. The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

By signing this Plea Agreement, the defendant agrees to waive any objections, motions, and defenses that the defendant might have to the government's decision. Any prosecutions that are not

PLEA AGREEMENT                                    4

time-barred by the applicable statute of limitations as of the date of this Plea Agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Plea Agreement and the commencement of any such prosecutions.  The defendant agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as of the date of this Plea Agreement.  The determination of whether the defendant has violated the Plea Agreement will be under a probable cause standard.

In addition, (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this Plea Agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this Plea Agreement, or any leads derived therefrom, should be suppressed.  By signing this Plea Agreement, the defendant waives any and all rights in the foregoing respects.

### H. Asset Disclosure.

The defendant agrees to make a full and complete disclosure of his assets and financial condition, and will complete the United States Attorney's Office's "Authorization to Release Information" and "Financial Affidavit" within five (5) weeks from the entry of the defendant's change of plea, including supporting documentation.  The defendant also agrees to have the Court enter an order to that effect.  The defendant understands that if he fails to complete truthfully and provide the described documentation to the United States Attorney's office within the allotted time, he will be considered in violation of the Agreement, and the government shall be entitled to the remedies set forth above in paragraph II.G.

### I. Agreement to Cooperate.

The defendant agrees to cooperate fully with the government and any other federal, state, or local law enforcement agency, as directed by the government.  As used in this Plea Agreement, "cooperation"

PLEA AGREEMENT                                              5

requires the defendant: (1) to respond truthfully and completely to all questions, whether in interviews, in correspondence, telephone conversations, before a grand jury, or at any trial or other court proceeding; (2) to attend all meetings, grand jury sessions, trials, and other proceedings at which the defendant's presence is requested by the government or compelled by subpoena or court order; (3) to produce voluntarily any and all documents, records, or other tangible evidence requested by the government; (4) not to participate in any criminal activity while cooperating with the government; and (5) to disclose to the government the existence and status of all money, property, or assets, of any kind, derived from or acquired as a result of, or used to facilitate the commission of, the defendant's illegal activities or the illegal activities of any conspirators.

### III.     THE GOVERNMENT'S OBLIGATIONS

**A.     Dismissals/Other Charges.**

The government agrees to move, at the time of sentencing, to dismiss without prejudice the remaining counts in the pending Information. The government also agrees not to reinstate any dismissed count except if this Agreement is voided as set forth herein, or as provided in paragraphs II.G (Violation of Plea Agreement by Defendant/Withdrawal of Plea), VI.B (Stipulated Guideline Calculation), and VII.B (Waiver of Appeal and Collateral Attack).

**B.     Recommendations.**

   1.     Incarceration Range.

The government will recommend that the defendant be sentenced to the low end of the guideline range as stipulated in paragraph VI.B below.

   2.     Acceptance of Responsibility.

The government will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of his offense level if the defendant clearly demonstrates acceptance of responsibility for his conduct as defined in U.S.S.G. § 3E1.1. This includes the defendant meeting with and assisting the probation officer in the preparation of the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

        3.      Reduction of Sentence for Cooperation.

The government agrees to recommend at the time of sentencing that the defendant's sentence of imprisonment be reduced by up to 15% of the applicable guideline sentence if he provides substantial assistance to the government, pursuant to U.S.S.G. § 5K1.1. The defendant understands that he must comply with paragraphs II.I and not violate this Plea Agreement as set forth in paragraph II.G herein. The defendant understands that it is within the sole and exclusive discretion of the government to determine whether the defendant has provided substantial assistance.

The defendant understands that the government may recommend a reduction in his sentence of less than 15% or no reduction at all; depending upon the level of assistance the government determines that the defendant has provided.

The defendant further understands that a motion pursuant to U.S.S.G. § 5K1.1 is only a recommendation and is not binding on the Court, that this Plea Agreement confers no right upon the defendant to require that the government make a § 5K1.1 motion, and that this Plea Agreement confers no remedy upon the defendant in the event that the government declines to make a § 5K1.1 motion. In particular, the defendant agrees not to try to file a motion to withdraw his guilty plea based on the fact that the government decides not to recommend a sentence reduction or recommends a sentence reduction less than the defendant thinks is appropriate.

If the government determines that the defendant has provided further cooperation within one year following sentencing, the government may move for a further reduction of his sentence pursuant to Rule 35 of the Federal Rules of Criminal Procedure.

        **C.**      **Use of Information for Sentencing.**

The government is free to provide full and accurate information to the Court and Probation, including answering any inquiries made by the Court and/or Probation and rebutting any inaccurate statements or arguments by the defendant, his attorney, Probation, or the Court. The defendant also understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

        **IV.**      **ELEMENTS OF THE OFFENSE**

At a trial, the government would have to prove beyond a reasonable doubt the following

PLEA AGREEMENT      7

elements of the offenses to which the defendant is pleading guilty, 18 U.S.C. § 371 (Conspiracy to Commit Wire Fraud).

Although *not* elements of Conspiracy to Commit an Offense Against the United States, in violation of 18 U.S.C. § 371, the elements of the underlying criminal offense (Wire Fraud, in violation of 18 U.S.C. § 1343) are:

   a. The defendant knowingly participated in a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

   b. The statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

   c. The defendant acted with the intent to defraud; that is, the intent to deceive or cheat; and

   d. The defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.

Pursuant to 18 U.S.C. § 1346, the term "scheme or artifice to defraud" includes a scheme or artifice to deprive another of the intangible right of honest services.

Thus, to convict the defendant at trial on the charge of Conspiracy to Commit an Offense Against the United States, in violation of 18 U.S.C. § 371 (Count One), the government would have to prove beyond a reasonable doubt that:

   a. Beginning at least as early as November 2006, and ending in or about February 2015, there was an agreement between two or more people to commit honest services fraud as charged in the Information;

   b. The defendant became a member of the conspiracy knowing at least one of its objects and intending to help accomplish it; and

   c. One of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

The defendant fully understands the nature and elements of the crimes charged in the Information to which he is pleading guilty, together with the possible defenses thereto, and has discussed them with his attorney.

V.     **MAXIMUM SENTENCE**

A.     **Maximum Penalty.**

The maximum sentence that the Court can impose is five years of incarceration, a fine of $250,000, a three year period of supervised release and a special assessment of $100. By signing this Plea Agreement, the defendant also agrees that the Court can order the payment of restitution for the full loss caused by the defendant's wrongful conduct. The defendant agrees that the restitution order is not restricted to the amounts alleged in the specific count to which he is pleading guilty. The defendant further agrees, as noted above, that he will not attempt to discharge in any present or future bankruptcy proceeding any restitution imposed by the Court.

B.     **Violations of Supervised Release.**

The defendant understands that if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to two additional years imprisonment.

VI.    **SENTENCING DETERMINATION**

A.     **Statutory Authority.**

The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

B.     **Stipulated Guideline Calculation.**

The government and the defendant agree that there is no material dispute as to the following sentencing guidelines variables and therefore stipulate to the following:

1. **Base Offense Level**: The base offense level for the charges to which the defendant is pleading guilty is **6**. See U.S.S.G. §§ 2X1.1 and 2B1.1(a)(1).

2. **Specific Offense Characteristics:**

    a. The parties agree and stipulate that fourteen levels are added **(+14)** under U.S.S.G. § 2B1.1, because the defendant received kickback payments pursuant to the scheme that exceeded $500,000 but not more than $1,500,000. See id. at (b)(1)(H). However, the parties rely on distinct applications of the relevant Guidelines provisions to reach this undisputed conclusion.

    1) The government's position is that all of the kickback money should have gone to PG&E and not to the defendant, and is therefore loss to PG&E. Thus, fourteen levels are added because the loss attributable to the defendant during the time period of his knowing involvement in the conspiracy and within the scope of his knowing involvement exceeded $500,000 but was not more than $1,500,000. Id. at (b)(1)(H).

    2) The defendant's position is that PG&E suffered a loss but that loss reasonably cannot be calculated, and the court should therefore use the gain to the defendant that resulted from the offense as an alternative measure of loss. See U.S.S.G. § 2B1.1, Application Note 3(B). Thus, fourteen levels are added because the gain to the defendant during the time period of his knowing involvement in the conspiracy and within the scope of his knowing involvement exceeded $500,000 but was not more than $1,500,000. Id. at (b)(1)(H); 2B1.1, Application Note 3(B).

    3) The parties agree that resolution of this dispute will not affect the applicable sentencing range and may impact only the Court's determination of a restitution order.

3. **Preliminary Offense Level:** The parties anticipate that the preliminary offense level will be **20**.

4. **Adjustments**: Three levels are subtracted (**-3**) if the defendant pleads guilty, accepts responsibility for his offense, and the Specific Offense Level is above 16. U.S.S.G. §3E1.1.

5. **Adjusted Offense Level**: Given the stipulations above, the parties anticipate that the adjusted offense level will be **17.**

6. **Criminal History and Sentencing Range**: The parties agree and stipulate that the applicable criminal history will be determined by the Court's probation officers. The parties estimate, but do not stipulate, that the defendant's criminal history category will be **I**, and that the Guidelines sentencing range will be no less than **24 to 30 months** in prison. The defendant understands that if the criminal history category differs from the parties' estimate, his Guidelines sentencing range may differ from that set forth here.

**C.     Departures or Other Enhancements or Reductions:**

The parties agree that they will not seek or argue in support of any other specific offense characteristics, Chapter Three adjustments (other than the decrease for "Acceptance of Responsibility"), or cross-references, except that the government may move for a departure or an adjustment based on a post-plea obstruction of justice (U.S.S.G. §3C1.1).  Both parties agree not to move for, or argue in support of, any departure from the Sentencing Guidelines.  However, the defendant may seek a variance from the Sentencing Guidelines under United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005), and may argue for any sentence supported by the facts and law.  The government may oppose the defendant's request for any sentence below the low-end of the applicable Guideline range.

## VII.     WAIVERS

**A.     Waiver of Constitutional Rights.**

The defendant understands that by pleading guilty he is waiving the following constitutional rights:  (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, constitutional challenges to the statutes of conviction, and other pretrial motions that have been filed or could be filed; (e) to subpoena witnesses to testify on his behalf; (f) to confront and cross-examine witnesses against him; and (g) not to be compelled to incriminate himself.

**B.     Waiver of Appeal and Collateral Attack.**

The defendant understands that the law gives the defendant a right to appeal his guilty plea, conviction, and sentence.  The defendant agrees as part of his plea, however, to give up the right to appeal the guilty plea, conviction, and the sentence imposed in this case as long as the sentence does not exceed the statutory maximum for the offense to which he is pleading guilty.  The defendant understands that this waiver includes, but is not limited to, any and all constitutional and/or legal challenges to the defendant's conviction and guilty plea, including arguments that the statutes to which defendant is pleading guilty are unconstitutional, arguments that the applicable statute of limitations period set forth in 18 U.S.C. § 3282 have expired, and any and all claims that the statement of facts attached to this agreement is insufficient to support the defendant's plea of guilty.  The defendant

PLEA AGREEMENT                                   11

specifically gives up the right to appeal any order of restitution the Court may impose.

Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the statutory maximum; and/or (2) the government appeals the sentence in the case. The defendant understands that these circumstances occur infrequently and that in almost all cases this Agreement constitutes a complete waiver of all appellate rights.

In addition, regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.

Notwithstanding the government's agreements in paragraph III.A above, if the defendant ever attempts to vacate his plea, dismiss the underlying charges, or modify or set aside his sentence on any of the counts to which he is pleading guilty, the government shall have the rights set forth in Section II.G herein.

### C. Waiver of Attorneys' Fees and Costs.

The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this Plea Agreement and any charges previously dismissed).

## VIII. ENTIRE PLEA AGREEMENT

Other than this Plea Agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

///
///
///
///

## IX.   APPROVALS AND SIGNATURES

### A.   Defense Counsel.

I have read this Plea Agreement and have discussed it fully with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this Plea Agreement.

Dated: 8/7/20

_____
CHRIS CANNON
Attorney for Defendant

### B.   Defendant:

I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement. In addition, no one has threatened or forced me in any way to enter into this Plea Agreement. Finally, I am satisfied with the representation of my attorney in this case.

Dated: 8/7/20

_____
RONALD STEVEN SCHOENFELD
Defendant

### C.   Attorney for United States:

I accept and agree to this Plea Agreement on behalf of the government.

Dated: August 10, 2020

McGREGOR W. SCOTT
United States Attorney

_____
TANYA B. SYED
Assistant United States Attorney

EXHIBIT "A"

**Factual Basis for Plea**

If this matter proceeded to trial, the United States would establish the following facts beyond a reasonable doubt:

In August 2006, defendant Ronald SCHOENFELD was hired by Pacific Gas & Electric Company ("PG&E") to oversee PG&E's trucking contracts. As an employee, SCHOENFELD owed PG&E his honest services. Specifically, PG&E's employee code of conduct included numerous policies that SCHOENFELD agreed to comply with, including the following:

- "Disclose any potential conflict of interest to your supervisor, and ensure that the appropriate decision-maker concurs in writing if you're allowed to remain in a situation that could be perceived as a conflict of interest."

- "If, during non-business hours, you solicit vendors or customers with whom you interact for PG&E, you must ensure that your solicitation does not create an appearance of impropriety or in any way imply that the vendor's or customer's dealings with PG&E will be affected by the response to your solicitation."

- "Maintain the confidentiality of information entrusted to you by PG&E and our customers, except when disclosure is properly authorized or legally mandated."

In November 2006, SCHOENFELD's cousin ("Individual 1") formed a limited liability company ("Company 1"), which was based in Stockton, in the State and Eastern District of California. SCHOENFELD offered to help Individual 1 obtain contracts for Company 1 in exchange for financial consideration. Individual 1 offered to pay 2.5% of the value of the contracts between Company 1 and PG&E in exchange for SCHOENFELD's help. SCHOENFELD accepted this offer.

SCHOENFELD took several steps to further this conspiracy. SCHOENFELD facilitated introductions with decision makers at PG&E and Individual 1 to help Company 1 receive contracts from PG&E. From 2007 to 2014, SCHOENFELD provided Individual 1 with rate information of competitors of Company 1, in violation of SCHOENFELD's duty to maintain confidentiality regarding such information. SCHOENFELD was aware of his duty to maintain confidentiality regarding such information.

In October 2008, SCHOENFELD assisted Individual 1 obtain an annual contract by and between PG&E and Company 1 worth at least $12,000,000, in violation of PG&E's bidding policies.

SCHOENFELD was aware that this contract was in violation of PG&E's bidding policies.

In January 2014, SCHOENFELD increased amount PG&E paid to Company 1 for moving transformers from one vehicle to another from $125 per unit to $275 per unit without the requisite PG&E internal approvals. SCHOENFELD was aware that this increase was in violation of PG&E's internal approval policies.

In March 2014, SCHOENFELD increased the rates paid to Company 1 from $1.30 per mile for shipping to $1.60 per mile without the requisite PG&E internal approvals. SCHOENFELD was aware that this rate increase was in violation of PG&E's internal approval policies.

Over the course of the conspiracy, Company 1 received at least $82,133,142 for services provided to PG&E for contracts obtained through the conspiracy. Specifically, Company 1 received the following payments—which originated in Louisiana, passed through Virginia or Texas, and were ultimately deposited into accounts in California controlled by Company 1—on the following dates from one of PG&E's billing processors:

| Date of Deposit | Amount of Deposit |
| --- | --- |
| December 29, 2014 | $25,211.32 |
| December 29, 2014 | $25,211.32 |
| December 29, 2014 | $25,211.32 |
| December 29, 2014 | $25,211.32 |
| January 7, 2015 | $71,384.58 |
| January 7, 2015 | $71,384.58 |
| January 7, 2015 | $71,384.58 |

In May 2007, SCHOENFELD caused a shell company, Diversity Transportation Inc., to be created to receive "kickback" payments for his role in the conspiracy. From May 2007 to September 2014, SCHOENFELD received at least $1,476,295.15 in kickback payments from Company 1 for the aid he provided to Company 1. SCHOENFELD caused payroll checks to be paid to various bank accounts in order to transfer the payments solicited from Individual 1. One of these bank accounts was a Bank of America Joint Savings Account. As of April 14, 2015, the only proceeds in this Bank of America Joint Savings Account was kickback payments from the conspiracy. On March 16, 2015 and April 14, 2015, SCHOENFELD wired $5,100 and $2,700 to his American Express card. These funds

were proceeds of the conspiracy.

SCHOENFELD was aware his kickback arrangement was not allowed by PG&E, and he took active steps to conceal his relationship with Individual 1 from PG&E. He avoided having social meetings at locations where other PG&E employees might be present. He also failed to disclose his familial relationship with Individual 1 in violation of his duties to PG&E. SCHOENFELD used personal electronic mail to communicate with Individual 1 regarding the payments to be made pursuant to this scheme to conceal their actions from PG&E.

*I have read and carefully reviewed the Factual Basis for Plea with my attorney. I agree that as it concerns my conduct it is correct. I also agree that if this matter proceeded to trial, the United States could establish each of the facts contained within the Factual Basis for Plea beyond a reasonable doubt, and that those facts satisfy the elements of the offense to which I am pleading guilty.*

Dated: August 10, 2020

_____
RONALD STEVEN SCHOENFELD
Defendant