McGREGOR W. SCOTT
United States Attorney
ANDRÉ M. ESPINOSA
AMY S. HITCHCOCK
TANYA B. SYED
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RONALD STEVEN SCHOENFELD,<br><br>Defendant. | CASE NO. 2:20-CR-00150-KJM<br><br>UNITED STATES' FORMAL OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT<br><br>DATE: November 16, 2020<br>TIME: 9:00 a.m.<br>COURT: Hon. Kimberly J. Mueller |

The United States of America (the "government") by and through its undersigned counsel, hereby moves to correct the Pre-Sentence Investigation Report ("PSR") as follows.

### I. GOVERNMENT OBJECTIONS TO THE PSR

**A. Paragraph 77 should be revised to require Schoenfeld to pay restitution to the victim of his criminal conduct, PG&E, in the amount of $1,476,295.15.**

Paragraph 77 of the PSR states—"Statutory Provisions: Pursuant to 18 U.S.C. § 3663A, restitution in the total amount of $0 shall be ordered in this case." The United States respectfully objects to the conclusion that the proper restitution amount is $0. Binding Ninth Circuit precedent requires otherwise. Indeed, the proper restitution amount is the full measure of illicit profit defendant Ronald Schoenfeld ("Schoenfeld") earned in transactions in which he engaged as an agent of PG&E with his co-conspirator's company, that is: $1,476,295.15.

In rejecting the government's argument on this point in her response to the government's informal objection to the PSR, the Probation Officer relied on the absence of evidence of direct loss to

PG&E stemming from Schoenfeld's criminal scheme.  *See* ECF NO. 16-1.  While that fact-based inquiry accords with the general case law interpreting the Mandatory Victim Restitution Act ("MVRA"), it ignores the specific legal consequences, here, of California Labor Code section 2860, which instructs that "[e]verything which an employee acquires by virtue of his employment, except the compensation which is due to him from his employer, *belongs to the employer*, whether acquired lawfully or unlawfully, or during or after the expiration of the term of his employment." (emphasis supplied).  Indeed, section 2860 establishes, as a matter of law, a basis for the restitution order the government seeks, and provides a foundation for the Court to find, under the MVRA, a direct loss to PG&E resulting from Schoenfeld's crime.  Moreover, as discussed below in more detail, the Ninth Circuit has upheld restitution orders based on application of section 2860 in nearly identical circumstances.  Accordingly, the government respectfully requests that the Court correct Paragraph 77 of the PSR to state:  "Statutory Provisions: Pursuant to 18 U.S.C. § 3663A, restitution in the total amount of $1,476,295.15 shall be ordered in this case."

### B. General application of the Mandatory Victim Restitution Act.

The MVRA provides restitution to victims of offenses against property, "including any offense committed by fraud or deceit."  18 U.S.C. § 3663A(c)(1)(A)(ii).  Under the MVRA, "the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant."  18 U.S.C. § 3664(f)(1)(A).  Moreover, the alternative availability of recovery through a civil lawsuit is irrelevant in determining restitution under the MVRA.  *See* 18 U.S.C. § 3664(f)(1)(B) ("In no case shall the fact that a victim has received or is entitled to receive compensation with respect to a loss from insurance or any other source be considered in determining the amount of restitution."); *see also United States v. Cienfuegos*, 462 F.3d 1160, 1168 (9th Cir. 2006) ("under the MVRA the availability of a civil suit can no longer be considered by the district court in deciding the amount of restitution").  The MVRA defines a victim as "'a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered."  *United States v. Anderson*, 741 F.3d 938, 951 (9th Cir. 2013) (quoting *United States v. Yeung*, 672 F.3d 594, 600 (9th Cir. 2012)).

1   A court "may award restitution under the MVRA only for loss that flows directly from 'the
2   specific conduct that is the basis of the offense of conviction.'" *United States v. May*, 706 F.3d 1209,
3   1214 (9th Cir. 2013) (quoting *United States v. Gamma Tech Indus., Inc.*, 265 F.3d 917, 927 (9th Cir.
4   2001)). The amount of restitution that may be ordered in a criminal judgment is limited "by the victim's
5   actual loss." *United States v. Bussell*, 504 F.3d 956, 964 (9th Cir. 2007). Thus, generally, a court may
6   not order restitution to reflect a defendant's "ill-gotten gains.'" *Anderson*, 741 F.3d at 951. While the
7   MVRA grants district courts "a degree of flexibility in accounting for a victim's complete loses," the
8   court may "utilize only evidence that possesses 'sufficient indicia of reliability to support its probable
9   accuracy.'" United *States v. Waknine*, 543 F.3d 546, 557 (9th Cir. 2008) (quoting *United States v.
10  Garcia-Sanchez*, 189 F.3d 1143, 1148-49 (9th Cir. 1999)). The MVRA does not require courts to
11  calculate restitution with exact precision, but some precision is required and "[s]peculation and rough
12  justice are not permitted.'" *United States v. Kilpatrick*, 798 F.3d 365, 388 (6th Cir. 2015). "The
13  government has the burden of proving the amount of the loss by a preponderance of the evidence."
14  *Anderson*, 741 F.3d at 951.

### C. The Ninth Circuit endorses restitution orders requiring disgorgement of illicit kickback proceeds earned by an agent like Schoenfeld to a principal like PG&E, under a California law making such payments the property of the principal.

The Ninth Circuit has held that an agent, like Schoenfeld in this case, may be ordered to disgorge to his principal, like PG&E here, all secret profits obtained through the principal-agent relationship. *See United States v. Gamma Tech Indus., Inc.*, 265 F.3d 917, 929 (9th Cir. 2001). In *Gamma Tech*, the Ninth Circuit made clear that "an employer suffers a loss in the amount of secret profits accepted by its agent and is entitled to restitution in that amount." *United States v. Gaytan*, 342 F.3d 1010, 1012 (9th Cir. 2003) (discussing *Gamma Tech*, 265 F.3d at 929). The Ninth Circuit in *Gamma Tech* affirmed the district court's decision that an order of restitution arising out of a kickback scheme like the one at issues in this case was appropriately based California Labor Code section 2860. 265 F.3d at 929. That code section states:

> Everything which an employee acquires by virtue of his employment, except the compensation which is due to him from his employer, belongs to the employer, whether acquired lawfully or unlawfully, or during or after the expiration of the term of his employment.

Cal. Lab. Code § 2860. The district court in *Gamma Tech* found that, because the defendant had deprived his employer of the kickback money which belonged to the employer under California law, the employer suffered a loss in the amount of the kickbacks. The Ninth Circuit agreed and noted:

> California courts have recognized that, under principles of agency theory, "[u]nless otherwise agreed, an agent who makes a profit in connection with transactions conducted by him on behalf of the principal is under a duty to give such profit to the principal," and that this rule "is applicable although the profit received by the fiduciary is not at the expense of the beneficiary." *Bank of Am. Nat'l Trust & Sav. Ass'n v. Ryan*, 207 Cal. App. 2d 698, 705-06, 24 Cal. Rptr. 739 (Cal.Ct.App.1962) (citing, in part, Cal. Labor Code section 2860); *see also Savage v. Mayer*, 33 Cal. 2d 548, 551, 203 P.2d 9 (1949) ("All benefits and advantages acquired by the agent as an outgrowth of the agency, exclusive of the agent's agreed compensation, are deemed to have been acquired for the benefit of the principal, and the principal is entitled to recover such benefits in an appropriate action."). Indeed, we stated long ago in a similar context that "[i]t is a settled principle ... that a bank officer who receives a bonus or other consideration for procuring a loan of the bank's funds commits a breach of trust, and that the consideration so paid belongs to the bank and may be recovered by it." *Fleishhacker v. Blum*, 109 F.2d 543, 545-46 (9th Cir. 1940).

*Gamma Tech*, 265 F.3d at 929.

Here, just like the defendant in *Gamma Tech*, Schoenfeld was an agent of his employer, PG&E. In the factual basis to his plea agreement, Schoenfeld admitted that he acknowledged various essential agent-principle duties when he began working for PG&E, including that he would alert PG&E of potential and actual conflicts of interests arising out of his employment. *See* ECF No. 12 at A-1. But Schoenfeld did not do so with respect to the secret "rebate program" that he hatched with his co-conspirator. Instead, Schoenfeld hid that agreement and his secret, illicit profits from PG&E, for years. To be sure, PG&E would have gladly accepted the 2.5% rebate or discount that Schoenfeld and his co-conspirator settled on, and would have collected those funds from Schoenfeld. But Schoenfeld never gave PG&E the option to accept those proceeds, which California law makes clear belonged to PG&E and not Schoenfeld. *See* Cal. Lab. Code § 2860.

Because Schoenfeld, through his fraud, deprived PG&E of profits that by operation of law belonged to it, every dollar of the kickbacks paid to Schoenfeld by his co-conspirator constitutes loss suffered by PG&E as a direct result of Schoenfeld's criminal conduct. *See Gamma Tech*, 265 F.3d at 929 (citing *Bank of Am. Nat'l Trust & Sav. Ass'n v. Ryan*, 24 Cal.Rptr. 739 (Cal. Ct. App. 1962)

(concluding the rule "is applicable although the profit received by the fiduciary is not at the expense of the beneficiary.")). Those kickback payments, and their aggregate total, are reflected in the discovery made available to Schoenfeld and the United States Probation Office. That definitive evidence forms the basis for the loss calculation in this case, which no party disputes. That evidence also more than satisfies the United States' burden to demonstrate PG&E's loss by a preponderance of the evidence for purposes of supporting a restitution award. Consequently, those losses are properly recoverable under the MVRA, and the Court should order restitution consistent with that evidence.

Accordingly, Paragraph 77 of the PSR should state—"Statutory Provisions: Pursuant to 18 U.S.C. § 3663A, restitution in the total amount of $1,476,295.15 shall be ordered in this case."[1]

## II. CONCLUSION

For the reasons stated above, the government respectfully requests that the Court grant its motion to correct the PSR.

Dated: November 2, 2020

McGREGOR W. SCOTT
United States Attorney

By: /s/ ANDRÉ M. ESPINOSA
ANDRE M. ESPINOSA
Assistant United States Attorney

---

[1] In its informal objections to the PSR, the government argued that, in the event the Court does not order full restitution in the amount of $1,476,295.15, an upward departure from the Guidelines fine amount to the maximum statutory fine of $250,000 is warranted, a position the Probation Officer accepted and incorporated into the PSR. See ECF No. 16-1. If the Court accepts the government's formal objection set forth herein and orders full restitution, a fine within the Guidelines range may be more appropriate than a maximum statutory fine. Otherwise, a maximum statutory fine is warranted.

Schoenfeld is able to pay a fine. See PSR ¶¶ 65-66 (noting Schoenfeld's net worth of $1.2 million in assets). If restitution is not ordered to the full extent of PG&E's losses, the Court should accept the Probation Officer's recommendation to vary upward and impose a maximum statutory fine. See PSR ¶¶ 86-87, ppg 19-20. Schoenfeld admits that the measure of his unjust enrichment in this case is the full amount the kickback payments he received from his co-conspirator: $1,476,295.15. See ECF No. 12 at A-2, A-3. The maximum Guideline fine amount (whether using the calculation reached by Probation or that in the plea agreement) is only a small fraction of the ill-gotten gain Schoenfeld obtained through his fraud. Even a maximum statutory fine of $250,000 is only approximately a sixth of Schoenfeld's total windfall fraud proceeds. Not imposing a fine of more than the maximum Guidelines amount would leave Schoenfeld's grotesque unjust enrichment without any meaningful remedy, in which case, his sustained criminal conspiracy may well have been worth the effort.