CHRISTOPHER J. CANNON, State Bar No. 88034
MATTHEW A. LAWS, State Bar No. 273697
Sugarman & Cannon
737 Tehama Street, No. 3
San Francisco, CA 94103
Telephone: 415-362-6252
Facsimile: 415-362-6431
chris@sugarmanandcannon.com

Attorneys for Defendant RONALD STEVEN SCHOENFELD

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RONALD STEVEN SCHOENFELD,<br><br>Defendant. | Case No. 2:20-cr-00150-KJM<br><br>**DEFENDANT RON SCHOENFELD'S RESPONSE TO UNITED STATES' OBJECTIONS TO PSR** |

### I. AWARDING RESTITUTION IS NOT APPROPRIATE IN THIS MATTER BECAUSE THERE IS NO PROOF OF ACTUAL LOSS AND ANY PURPORTED LOSS IS NOT READILY ASCERTAINABLE

The goal of restitution under the MVRA is to make the victim whole. Consequently, any award is limited to the victim's "actual losses." United States v. Anderson, 741 F.3d 938, 951 (9th Cir. 2013); United States v. Bussell, 504 F.3d 956, 964 (9th Cir. 2007); see also United States v. Fair, 699 F.3d 508, 514 (D.C. Cir. 2012) ("The MVRA demands that restitution be awarded only for the victim's actual, provable loss . . ."); United States v. Innarelli, 524 F.3d 286, 294 (1st Cir. 2008) ("This is necessarily a backward-looking inquiry that takes into account what actually happened, including whether the victim managed to recover some or all of the value it originally lost."). Accordingly, "the district court may not order restitution to reflect Defendants' ill-gotten gains." Anderson, 741 F.3d at 951 (quoting United States v. Kuo, 620 F.3d 1158, 1165-66 (9th Cir. 2010), abrogated on other grounds by Robers v. United States, 572 U.S. 639 (2014)).

The government has the burden of proving the amount of the loss by a preponderance of the evidence. Anderson, 741 F.3d at 951. The MVRA demands "some precision when calculating restitution. Speculation and rough justice are not permitted." Id. at 954. As a result, before this Court can award restitution, the government must give the Court a basis for making a "reasonable estimate" of the victims' loss and demonstrate the requisite causal connection. Id. Awarding a victim an amount greater than an actual loss constitutes plain error. United States v. Yeung, 672 F.3d 594, 602 (9th Cir. 2012) (citing United States v. Rizk, 660 F.3d 1125, 1137 (9th Cir. 2011)), abrogated on other grounds by Robers v. United States, 572 U.S. 639 (2014)).

Section 5E1.1(b)(2) of the Sentencing Guidelines states that when "determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process" the Court need not impose restitution under the MVRA.

Congress "hoped to avoid creating a system that would, essentially, turn sentencing hearings into complicated, prolonged trials of the normal civil variety." United States v. Gordon, 393 F.3d 1044, 1060 (9th Cir. 2004) (Fernandez, J., concurring and dissenting); see also United States v. Kones, 77 F.3d 66, 69 (3rd Cir. 1996) ("[I]t was expected that entitlement to restitution could be readily determined by the sentencing judge based upon the evidence he had heard during the trial of the criminal case or learned in the course of determining whether to accept a plea and what an appropriate sentence would be."); S. REP.NO. 104-179, at *19 (1996), reprinted in 1996 U.S.C.C.A.N. 924, 931-32 ("In all cases, it is the committee's intent that highly complex issues related to the cause or amount of a victim's loss not be resolved under the provisions of mandatory restitution. The committee believes that losses in which the amount of the victim's losses are speculative, or in which the victim's loss is not clearly causally linked to the offense, should not be subject to mandatory restitution.").

Here, the government has not proven any actual loss. Instead, the government wants to substitute the amount of the kickbacks Schoenfeld received as an approximation for unproven, purported losses. However, a defendant's gains do not necessarily equate to losses. See Anderson, supra, 741 F.3d at 951. "Where the alleged loss is not quantifiable to any degree of certainty, the government's burden has not been satisfied, and no restitution should be ordered." Id. at 954. Under the facts of this case, an award to

PG&E based upon the kickbacks to Schoenfeld would be a windfall to PG&E, rather than compensation for an actual loss.

The government relies upon a creative theory of restitution based on <u>United States v. Gamma Tech Indus., Inc.</u>, 265 F.3d 917, 929 (9th Cir. 2001), and California Labor Code Section 2860, which may be appealing at first glance, but which should not be applied and is distinguishable on the facts. In <u>Gamma Tech</u>, the defendant's actions caused an actual loss to his employer. No such loss has been shown here. To the contrary, Schoenfeld's illegal activity actually saved PG&E money, and the government has not even begun to calculate the financial effects of Schoenfeld's actions on PG&E.

First, the kickbacks obtained by Schoenfeld did not simply go into his pocket. He paid taxes on them and spent money setting up an entity to receive them. Second, the kickbacks were not actually paid by PG&E. PG&E used a third-party payment contractor, AFS Logistics, to handle the payments. Third, there is no proof that PG&E lost money. One of the things Schoenfeld did is share information so that All American Logistics would be able to underbid other contractors. But for the relationship between AAL and Schoenfeld, PG&E would have had to pay more money for similar services. PG&E did not suffer a financial loss and should not receive a financial windfall. <u>See e.g</u> <u>Robers</u>, supra, 572 U.S. at 644 (MVRA allows for credits against a restitution obligation to prevent a financial "windfall" to the victim).

<u>Gamma Tech</u>, upon which the government relies (U.S. Objections to PSR, Doc. No. 17 at 3), is distinguishable from this case because, in <u>Gamma Tech</u>, the kickbacks were paid from inflated charges in noncompetitively awarded contracts. In <u>Gamma Tech</u>, the record affirmatively showed that the victim corporation's "profit margin shrank drastically during the years of the kickback scheme but promptly returned to its previous level after [the defendant] was fired." <u>Gamma Tech</u>, supra, 265 F.3d at 926.

The contracts here were mainly based on competitive billing, and the contract rate went down over time. Certainly, Schoenfeld increased some elements of some contracts, but there is no proof those increases would not have been paid to other contractors, and the government is not arguing those increases are the amount of "restitution." Instead, the government is using the amount of the kickbacks as a proxy for restitution, and this substitution and estimation is inappropriate under the MVRA.

The contract amounts PG&E awarded here were either the same or less than bids from other contractors, and the government has submitted no evidence proving that PG&E paid any less for the

contracted services after Schoenfeld was no longer involved with the process. The government has not even attempted to calculate how much money PG&E saved through Schoenfeld's actions, and those amounts would have to be deducted from any restitution award under the California Labor Code to avoid a windfall to PG&E.

The practical difficulty of basing a restitution award on Labor Code § 2860 is demonstrated by the lack of any reported California cases imposing restitution under the § 2860 theory the government is proposing. California's criminal restitution laws; see e.g. Cal. Pen. Code § 1202.4; are similar to the MVRA, and counsel has been unable to find a California case in which a court imposed restitution under the theory the government seeks to apply.

This case is much more like United States v. Kuo, 620 F.3d 1158 (9th Cir. 2010), than Gamma Tech. In Kuo, the district court did as the government suggests is appropriate here and "determined the amount of restitution by calculating Defendants' ill-gotten gains via their exploitation of the victims." Kuo, 620 F.3d at 1164. The Ninth Circuit held that approach to be plain error. Id. at 1165.

Rather, this case is like United States v. Kays, 2020 U.S. Dist. LEXIS 70004 (D.Md. Apr. 21, 2020, No. CCB-16-307). In Kays, a subcontractor paid kickbacks to the defendant in return for awarding work. The kickbacks were built into the profit margin of the bids that were submitted and ultimately paid by the prime contractor and the government. Kays, 2020 U.S. Dist. LEXIS 70004, at *7. The government argued for restitution in the amount of the kickbacks because the subcontractor was apparently willing to provide services at a lower profit margin than other contractors, and therefore the alleged victim should have been the beneficiary of the subcontractor's willingness to accept a lower profit margin. Put another way, the government argued that the loss in Kays was the amount the subcontractor set aside for the kickbacks. Id. at 7-8. The evidence in Kays showed that the rates paid were "around the same as other subcontractors," and that "with insignificant exceptions, everything the government paid for under the rates that they approved was performed." The district court found that "the government agreed to pay a certain amount of money [for the] services, the service was satisfactory, and the government paid the amount of money it expected to pay." Id. at 8-9. Under these facts, the district court found that the government failed to prove an "actual loss."

This case is also similar to United States v. Li, No. 15-CR-252 (PKC), 2019 U.S. Dist. LEXIS

28877 (E.D.N.Y. Feb. 24, 2019), where the district court held that the Confederation of North, Central America and Caribbean Association Football ("CONCACAF") would only be entitled to restitution if it could show that the bribery accepted by the defendant and his co-conspirators caused CONCACAF to receive under-valued media rights, and there was no evidence those media rights were undervalued. Li, 2019 U.S. Dist. LEXIS 28877, at *14-16. Citing United States v. Finazzo, 850 F.3d 94 (2d Cir. 2017), the district court in Li noted that under 18 U.S.C. § 3663A, restitution may only be awarded where there is a "direct correlation between the defendant's gain and the victim['s] loss." Li, 2019 U.S. Dist. LEXIS 28877, at *15 (citing Finazzo at 117-18). In Finazzo, the Second Circuit held that "[t]he goal of restitution, in the criminal context, is 'to restore a victim, to the extent money can do so, to the position he occupied before sustaining injury.'" Id. at 117 (quoting United States v. Battista, 575 F.3d 226, 229 (2d Cir. 2009)). Following this principle, the district court in Li interpreted Finazzo as precluding a principal from obtaining as restitution the illegal bribe paid to its agent because the principal would not be entitled to receive such a bribe itself, and thus the deprivation of that bribe does not "directly correlate" to the principal's "loss." To find otherwise would have resulted in a windfall to CONCACAF, rather than make whole a measurable loss. Accordingly, the district court held that an agency theory did not apply because it was not shown that the defendant's acceptance of the bribes caused CONCACAF to lose any money. Li, 2019 U.S. Dist. LEXIS 28877, at *15-16.

Here, this Court can make none of the factual findings required for an award of restitution under Gamma Tech because there is no proof that PG&E paid prices beyond normal, competitive market rates. The government has not met its burden to prove an actual loss by a preponderance of the evidence, and it is probable that PG&E did not actually lose any money.

There was no overcharging here. To the contrary, even though Schoenfeld personally profited, his actions led to an overall cost reduction to PG&E. One of the things Schoenfeld did was to provide rate and bidding information so that All American could underbid potential competitors. This action led to reductions in cost to PG&E rather than a loss.

In United States v. Harvey, 532 F.3d 326, 339-40 (4th Cir. 2008), an honest services fraud case, the defendant appellant argued that the government failed to present sufficient evidence of actual loss at either trial or sentencing. The government relied on testimony indicating that the defendant had failed to

comply with certain aspects of its contract, for example, failing to hire the contractually required number of employees, and employing individuals who lacked the requisite level of security clearance called for in the contract. Because the government presented no loss figures, it attempted to rely upon a profit margin (or gain) as an approximation of actual loss. The Fourth Circuit determined that both the Tenth and Eighth Circuits found that a defendant's gain in undertaking criminal activity is not an appropriate estimate of loss for purposes of calculating the amount of restitution under the MVRA. Harvey at 340-41 (citing United States v. Chalupnik, 514 F.3d 748 (8th Cir. 2008) and United States v. Galloway, 509 F.3d 1246 (10th Cir. 2007)).

> It is well settled that a restitution order must be based on actual loss. As we explained in Quarrell, although gain may be used to determine a defendant's offense level under the Guidelines (if it more closely reflects actual harm than actual loss does), it is not an appropriate estimate of loss when determining the amount of restitution under § 5E1.1 or the MVRA.

Harvey at 341 (quoting Galloway, 509 F.3d at 1253-54). The Court in Harvey therefore held that the district court erroneously used gain to approximate the amount of actual loss, and that any order of restitution must be based on sufficient evidence of the amount of actual loss incurred as a result of the fraudulently obtained contract. "Profit gained by the defendants may not be used in its stead." Id.

Unlike Gamma Tech, where "the district court found the payments to Gamma Tech and Tidelands were intentionally inflated; [] Pac Ship was not able to pass these inflated costs on to Navy; and (c) Pac Ship's ensuing lost profits "directly resulted "from the payment of the kickbacks," Gamma Tech, supra, 265 F.3d at 926. Here, there were no inflated payments to All American and PG&E did not lose anything as a result of the kickbacks. Accordingly, this Court should not Order restitution.

//

//

//

//

## II. REQUEST FOR UPWARD DEPARTURE

The defense has had a discussion with the United States regarding Footnote One and a potential request for an upward departure regarding the fine amount. The government has informed defense counsel that it intends to withdraw that request for an upward departure, and if it seeks a fine, will seek a fine consistent with Sentencing Guidelines and the Plea Agreement.

Dated: November 9, 2020

Respectfully submitted,

/s/
Christopher J. Cannon
Matthew A. Laws
Attorneys for Ron Schoenfeld