CHRISTOPHER J. CANNON, State Bar No. 88034
MATTHEW A. LAWS, State Bar No. 273697
Sugarman & Cannon
737 Tehama Street, No. 3
San Francisco, CA 94103
Telephone: 415-362-6252
Facsimile: 415-362-6431
chris@sugarmanandcannon.com

Attorneys for Defendant RONALD STEVEN SCHOENFELD

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RONALD STEVEN SCHOENFELD,<br><br>Defendant. | Case No. 2:20-cr-00150-KJM<br><br>**DEFENDANT RON SCHOENFELD'S RESPONSE TO PG&E STATEMENT REGARDING RESTITUTION** |

**I.   AWARDING RESTITUTION IS NOT APPROPRIATE IN THIS MATTER BECAUSE THERE IS NO PROOF OF ACTUAL LOSS AND ANY PURPORTED LOSS IS NOT READILY ASCERTAINABLE**

Just prior to the original day set for sentencing in this case, PG&E submitted a statement regarding restitution, claiming that Ron Schoenfeld caused a loss to PG&E of 8.5 million dollars. At the original hearing, counsel for Schoenfeld attempted to point out that the PG&E submission appeared to be a one-sided and misleading presentation and that a fair evaluation of the issue would require counsel to see the documents supporting PG&E's claim, such as the actual contracts, bids, and other underlying information. Shortly after that hearing, and as discussed at the hearing, the defense sent a letter to PG&E requesting the underlying information supporting its claims. PG&E has now stated that it is declining to pursue its original, extravagant, 8.5 million dollar claim, and is instead seeking restitution in the amount of the kickbacks Schoenfeld admittedly received, including prejudgment interest. Doc. No. 31 at 1-2.

//

//

As we argued in our original Objections to PSR, Doc. No. 19 at 1:

> The goal of restitution under the MVRA is to make the victim whole. Consequently, any award is limited to the victim's "actual losses." United States v. Anderson, 741 F.3d 938, 951 (9th Cir. 2013); United States v. Bussell, 504 F.3d 956, 964 (9th Cir. 2007); see also United States v. Fair, 699 F.3d 508, 514 (D.C. Cir. 2012) ("The MVRA demands that restitution be awarded only for the victim's actual, provable loss . . ."); United States v. Innarelli, 524 F.3d 286, 294 (1st Cir. 2008) ("This is necessarily a backward-looking inquiry that takes into account what actually happened, including whether the victim managed to recover some or all of the value it originally lost."). Accordingly, "the district court may not order restitution to reflect Defendants' ill-gotten gains." Anderson, 741 F.3d at 951 (quoting United States v. Kuo, 620 F.3d 1158, 1165-66 (9th Cir. 2010), abrogated on other grounds by Robers v. United States, 572 U.S. 639 (2014)).

PG&E's latest filing seeks exactly what Anderson forbids – to forfeit Ron Schoenfeld's ill-gotten gains. Awarding a victim an amount greater than an actual loss constitutes plain error. United States v. Yeung, 672 F.3d 594, 602 (9th Cir. 2012) (citing United States v. Rizk, 660 F.3d 1125, 1137 (9th Cir. 2011)), abrogated on other grounds by Robers v. United States, 572 U.S. 639 (2014)).

Here, neither the government nor PG&E have proven any actual loss. Instead, the government and PG&E want to substitute the amount of the kickbacks Schoenfeld received as an approximation for unproven, purported losses. However, a defendant's gains do not necessarily equate to losses. See Anderson, supra, 741 F.3d at 951. "Where the alleged loss is not quantifiable to any degree of certainty, the government's burden has not been satisfied, and no restitution should be ordered." Id. at 954. Under the facts of this case, an award to PG&E based upon the kickbacks to Schoenfeld would be a windfall to PG&E, rather than compensation for an actual loss.

The government and PG&E rely upon a creative theory of restitution based on United States v. Gamma Tech Indus., Inc., 265 F.3d 917 (9th Cir. 2001), and California Labor Code Section 2860, which may be appealing at first glance. However, Gamma Tech should not be applied and is distinguishable on the facts. In Gamma Tech, the defendant's actions caused the employer an actual loss. 265 F.3d at 926. No such loss has been shown here. To the contrary, Schoenfeld's illegal activity actually saved PG&E money, and the neither the government nor PG&E have provided a calculation of the financial effects of Schoenfeld's actions on PG&E.

First, the kickbacks obtained by Schoenfeld did not simply go into his pocket. He paid taxes on them and spent money setting up an entity to receive them. Second, the kickbacks were not actually paid

1  by PG&E.  PG&E used a third-party payment contractor, AFS Logistics, to handle the payments.  Third, there is no proof that PG&E lost money.  One of the things Schoenfeld did is share information so that All American Logistics would be able to underbid other contractors.  But for the relationship between AAL and Schoenfeld, PG&E may have had to pay more money for similar services.  PG&E did not suffer a financial loss and should not receive a financial windfall.  See e.g., Robers, supra, 572 U.S. at 645 (MVRA allows for credits against a restitution obligation to prevent a financial "windfall" to the victim).

Gamma Tech, upon which the government and PG&E rely, is distinguishable from this case because, in Gamma Tech, the kickbacks were paid from inflated charges in noncompetitively awarded contracts.  In Gamma Tech, the record affirmatively showed that the victim corporation's "profit margin shrank drastically during the years of the kickback scheme but promptly returned to its previous level after [the defendant] was fired."  Gamma Tech, supra, 265 F.3d at 926.

The contracts here were mainly based on competitive billing, and the contract rate went down over time.  The record is undisputed that at times Schoenfeld shared information in order to leverage a better price from a subtractor.  Certainly, Schoenfeld increased some elements of some contracts, but there is no proof those increases would not have been paid to other contractors, and neither the government nor PG&E argue those increases are the amount of "restitution."  Instead, both the government and PG&E are using the amount of the kickbacks as a proxy for restitution, and this substitution and estimation is inappropriate under the MVRA.

The contract amounts PG&E awarded here were either the same or less than bids from other contractors, and neither the government nor PG&E have submitted evidence proving that PG&E paid any less for the contracted services after Schoenfeld was no longer involved with the process.  Neither the government nor PG&E have produced any calculations showing how much money PG&E saved through Schoenfeld's actions, and those amounts would have to be deducted from any restitution award under the MVRA to avoid a windfall to PG&E.

The practical difficulty of basing a restitution award on Labor Code § 2860 is demonstrated by the lack of any reported California cases imposing restitution under the § 2860 theory the government is proposing.  California's criminal restitution laws; see e.g., Cal. Pen. Code § 1202.4; are similar to the

MVRA, and counsel has been unable to find a California case in which a court imposed restitution under the theory the government seeks to apply.

For Labor Code § 2860 to apply, accepting kickbacks would have to be one of Ron Schoenfeld's job duties. California courts have interpreted California Labor Code, Section 2860 as meaning that: "Where an employee creates something <u>as part of his duties under his employment</u>, the thing created is the property of his employer unless, of course, by appropriate agreement, the employee retains some right in or with respect to the product." <u>Zahler v. Columbia Pictures Corp.</u>, 180 Cal.App.2d 582, 589 (1960). (emphasis added)  Ron Schoenfeld did not acquire his kickbacks by virtue of his duties under his employment. To the contrary, he acquired his kickbacks by acting outside of the rules of his employment. The only cases that give employers rights to kickbacks are from Federal Courts, less accustomed to interpreting California law. While some California cases, by analogy, support our position, no California case expressly decides the issue here, whether illegal kickbacks are owned by the employer.

In an old case, construing a predecessor statute, an employee grading a mill site found some quartz containing gold worth about $600.00 dollars. His employers took the gold from him, claiming to own it under then Civ.Code, § 1985, which like the current Labor Code § 2860 provided that everything which an employee acquires by virtue of his employment, except his compensation, belongs to the employer. The California Supreme Court held the employee did not find the gold by virtue of the employment, because he was employed to grade the site, rather than search for gold. <u>Burns v. Clark</u>, 133 Cal. 634, 638 (1901). Schoenfeld was not employed to obtain kickbacks.

Another area where the scope of employment is discussed is in California's employee indemnification provision, Cal. Labor Code § 2802. Under California Labor Code § 2802, employees are entitled to indemnification for expenses incurred "<u>in direct consequence</u> of the discharge of his duties as such, or of his obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying such direction, believed them to be unlawful." Cal. Labor Code § 2802 (emphasis added); <u>see e.g.</u>, <u>Douglass v. Los Angeles Herald-Examiner</u>, 50 Cal.App.3d 449 (1975).

There are many cases denying indemnification if an employee is acting outside the scope of his employment. In <u>Douglass</u> the Court noted

> In the case at bar the right of recovery is derived from a statute rather than an insurance policy. Since the statutory right is based upon a state of fact (if he is sued "in direct consequence of the discharge of his duties as such, or of his obedience to the directions of the employer" etc.) it must logically follow that if the statutorily defined state of facts does not exist then the statutory rights do not arise. Consequently an employer does not have a duty to defend an employee who is sued solely because he was off on a frolic of his own not within the scope of his employment and not in obedience to the directions of his employer.

Douglas v. L.A. Herald-Examiner, 50 Cal.App.3d 449, 464 (1975).

The situation here is similar, Schoenfeld was acting in contravention of his employer, PG&E's rules and not for PG&E's benefit when he received the kickbacks.  He was off on an unapproved frolic of his own.

This case is much more like United States v. Kuo, 620 F.3d 1158 (9th Cir. 2010), than Gamma Tech.  In Kuo, the district court did as the government suggests is appropriate here and "determined the amount of restitution by calculating Defendants' ill-gotten gains via their exploitation of the victims." Kuo, 620 F.3d at 1164.  The Ninth Circuit held that approach to be plain error.  Id. at 1165.

Rather, this case is like United States v. Kays, 2020 U.S. Dist. LEXIS 70004 (D.Md. Apr. 21, 2020, No. CCB-16-307).  In Kays, a subcontractor paid kickbacks to the defendant in return for awarding work.  The kickbacks were built into the profit margin of the bids that were submitted and ultimately paid by the prime contractor and the government.  Kays, 2020 U.S. Dist. LEXIS 70004, at *7.  The government argued for restitution in the amount of the kickbacks because the subcontractor was apparently willing to provide services at a lower profit margin than other contractors, and therefore the alleged victim should have been the beneficiary of the subcontractor's willingness to accept a lower profit margin.  Put another way, the government argued that the loss in Kays was the amount the subcontractor set aside for the kickbacks.  Id. at 7-8.  The evidence in Kays showed that the rates paid were "around the same as other subcontractors," and that "with insignificant exceptions, everything the government paid for under the rates that they approved was performed."  The district court found that "the government agreed to pay a certain amount of money [for the] services, the service was satisfactory, and the government paid the amount of money it expected to pay."  Id. at 8-9.  Under these facts, the district court found that the government failed to prove an "actual loss."

1  This case is also similar to United States v. Li, No. 15-CR-252 (PKC), 2019 U.S. Dist. LEXIS
2  28877 (E.D.N.Y. Feb. 24, 2019), where the district court held that the Confederation of North, Central
3  America and Caribbean Association Football ("CONCACAF") would only be entitled to restitution if it
4  could show that the bribery accepted by the defendant and his co-conspirators caused CONCACAF to
5  receive under-valued media rights, and there was no evidence those media rights were undervalued. Li,
6  2019 U.S. Dist. LEXIS 28877, at *14-16, citing United States v. Finazzo, 850 F.3d 94 (2d Cir. 2017).
7  The district court in Li noted that under 18 U.S.C. § 3663A, restitution may only be awarded where there
8  is a "direct correlation between the defendant's gain and the victim['s] loss." Id. at *15, citing Finazzo at
9  117-18.

10  In Finazzo, the Second Circuit held that "[t]he goal of restitution, in the criminal context, is 'to
11  restore a victim, to the extent money can do so, to the position he occupied before sustaining injury.'"
12  Finazzo, 850 F.3d at 117, quoting United States v. Battista, 575 F.3d 226, 229 (2d Cir. 2009).  Following
13  this principle, the district court in Li interpreted Finazzo as precluding a principal from obtaining as
14  restitution the illegal bribe paid to its agent because the principal, like PG&E here, would not be entitled
15  to receive such a bribe itself, and thus the deprivation of that bribe does not "directly correlate" to the
16  principal's "loss."  To find otherwise would have resulted in a windfall to the principal, rather than make
17  whole a measurable loss.  Accordingly, the district court held that an agency theory did not apply because
18  it was not shown that the defendant's acceptance of the bribes caused his principal to lose any money. Li,
19  2019 U.S. Dist. LEXIS 28877, at *15-16.

20  Similarly, the Tenth Circuit, relying on Ninth Circuit cases, held that it was improper to equate
21  the amount of kickbacks received by a defendant with the amount of restitution to be paid, because the
22  focus under VWPA should be amount of loss sustained by victim, not the amount received by the
23  defendant. United States v. Guthrie, 64 F.3d 15104 (10th Cir. 1995).  Even in a prosecution for receiving
24  kickbacks for illegal Medicare referrals, the Eleventh Circuit has also ruled Courts should not look at the
25  amount of the kickbacks received in calculation Restitution under the VWPA. United States v. Vaghela,
26  169 F.3d 729 (11th Cir. 1999).

27  Here, this Court can make none of the factual findings required for an award of restitution under
28  Gamma Tech because there is no proof that PG&E paid prices beyond normal, competitive market rates.

1. The government has not met its burden to prove an actual loss, it is probable that PG&E did not actually lose any money, and Schoenfeld was acting outside of the scope of his employment when he was dealing with his cousin.

There was no overcharging here.  To the contrary, even though Schoenfeld personally profited, his actions led to an overall cost reduction to PG&E.  One of the things Schoenfeld did was to provide rate and bidding information so that All American could underbid potential competitors.  This action led to cost reductions for PG&E rather than a loss.

In United States v. Harvey, 532 F.3d 326, 339-40 (4th Cir. 2008), an honest services fraud case, the defendant appellant argued that the government failed to present sufficient evidence of actual loss at either trial or sentencing.  The government relied on testimony indicating that the defendant had failed to comply with certain provisions of a contract by, for example, failing to hire the contractually required number of employees and employing individuals who lacked the requisite level of security clearance.  Because the government presented no loss figures, it attempted to rely upon a profit margin (or gain) as an approximation of actual loss.  The Fourth Circuit agreed with both the Tenth and Eighth Circuits, which found that a defendant's gain in undertaking criminal activity is not an appropriate estimate of loss for purposes of calculating the amount of restitution under the MVRA.  Harvey at 340-41, citing United States v. Chalupnik, 514 F.3d 748 (8th Cir. 2008) and United States v. Galloway, 509 F.3d 1246 (10th Cir. 2007)).

> It is well settled that a restitution order must be based on actual loss. As we explained in Quarrell, although gain may be used to determine a defendant's offense level under the Guidelines (if it more closely reflects actual harm than actual loss does), it is not an appropriate estimate of loss when determining the amount of restitution under § 5E1.1 or the MVRA.

Harvey at 341 (quoting Galloway, 509 F.3d at 1253-54).  The Court in Harvey therefore held that the district court erroneously used gain to approximate the amount of actual loss, and that any order of restitution must be based on sufficient evidence of the amount of actual loss incurred as a result of the fraudulently obtained contract.  "Profit gained by the defendants may not be used in its stead."  Id.

Unlike Gamma Tech, where "the district court found the payments to Gamma Tech and Tidelands were intentionally inflated; [] Pac Ship was not able to pass these inflated costs on to Navy; and (c) Pac Ship's ensuing lost profits "directly resulted" from the payment of the kickbacks;" Gamma Tech, supra,

265 F.3d at 926; here, there were no inflated payments to All American, and PG&E did not lose anything as a result of the kickbacks.

Accordingly, this Court should not Order restitution.

Dated: January 15, 2021	Respectfully submitted,

	/s/
	Christopher J. Cannon
	Matthew A. Laws
	Attorneys for Ron Schoenfeld