TIMOTHY J. LUCEY, SBN 172332
PACIFIC GAS & ELECTRIC COMPANY
LAW DEPARTMENT
P.O. Box 7442
San Francisco, CA 94120
Telephone: (415) 973-7136
Facsimile:  (415) 973-5520

Attorney for
PACIFIC GAS AND ELECTRIC COMPANY

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>RONALD STEVEN SCHOENFELD,<br><br>　　　　　Defendant. | Case No.: 20-CR-00150-KJM<br><br>**VICTIM PACIFIC GAS AND ELECTRIC COMPANY'S REPLY IN SUPPORT OF SUBMISSION REGARDING RESTITUTION**<br><br>Date: January 25, 2021<br>Time: 9:00 a.m.<br>Judge: Hon. Kimberly J. Mueller |

## I.  INTRODUCTION

Pacific Gas and Electric Company ("PG&E") submits this reply to defendant Ronald Steven Schoenfeld's opposition brief, filed – without explanation – four days after it was due. Schoenfeld's opposition stands in direct contradiction of sworn admissions he made in his plea to the Court just last year.  Rather than accept responsibility for his crimes, Schoenfeld has apparently decided to use the restitution process to present a strained rationalization of his offenses as somehow altruistic and beneficial to PG&E ratepayers.  The Court should reject this misguided effort and instead recognize Schoenfeld's actions as that of a dishonest former employee who has already admitted to both receiving over $2 million in kickbacks and causing monetary loss to PG&E.

////

////

## II.  ARGUMENT

### A. Schoenfeld Does Not Dispute PG&E's Restitution Calculations

As a threshold matter, Schoenfeld does not oppose PG&E's calculation of the restitution amount, including PG&E's right to and calculation of prejudgment interest.  PG&E calculated the amount of restitution by reference to Schoenfeld's plea agreement, in which he admitted to conspiring with his cousin to award PG&E contracts to All American Logistics (AAL) in exchange for 2.5% of the value of those contracts.  *See* Dkt. No. 31 at 4 (citing Dkt. No. 12 at A-1).  Based on Schoenfeld's further admission that AAL received at least $82,133,142 for services provided to PG&E for contracts obtained through the conspiracy, the factual record is undisputed that Schoenfeld received at least $2,007,164.08 in kickbacks.  *See id.* (citing Dkt. No. 12 at A-2).  For the reasons stated below, as well as in PG&E's opening submission in support of restitution, those kickbacks are monetary losses to PG&E and accordingly should be awarded as restitution.

In addition, Schoenfeld disputes neither PG&E's right to prejudgment interest nor its calculation of such interest.  Pursuant to PG&E's unchallenged tabulations, PG&E should be awarded $133,557.24 in prejudgment interest.  *See id.* at 6.

Together, these totals constitute a restitution amount to PG&E of **$2,140,721.32**.

### B. Under *Gamma Tech*, The Kickbacks Themselves Are Monetary Loss

Binding Ninth Circuit precedent holds that the kickbacks Schoenfeld received are, as a matter of law, monetary losses to PG&E that should be returned through restitution.  As PG&E explained in its opening submission, *United States v. Gamma Tech* affirmed a district court's award of restitution to an employer based on two separate theories: (1) lost profits, and (2) loss of kickbacks.  265 F.3d 917 (9th Cir. 2001).  With respect to kickbacks, the court reasoned that under California law as well as principles of agency theory, the kickbacks that the employee (Stanley) received belonged to the employer, Pac Ship.  *Id.* at 928-29.  Thus, when "Stanley deprived Pac Ship of the kickback money which belonged to Pac Ship under California law, *Pac Ship suffered a loss in the amount of the kickbacks*." *Id.* at 929 (emphasis added).

////

Schoenfeld, however, ignores *Gamma Tech*'s straightforward reasoning, arguing that PG&E's decision not to demonstrate its losses from overcharges means that it is somehow not entitled to recover for the loss of the kickbacks. Far from it. *Gamma Tech* includes no such requirement, and instead treats the employer's loss of kickbacks *as a loss in and of itself*. *See id.* at 928 (considering the "[l]oss of the kickbacks" as "additional restitution" owed by the employee to the employer).

Other Ninth Circuit decisions have recognized and followed this holding. In *United States v. Gaytan*, a Ninth Circuit panel relied on *Gamma Tech* in granting restitution to the City of Colton for the total amount of bribes retained by its former mayor. 342 F.3d 1010, 1012 (9th Cir. 2003) (summarizing *Gamma Tech* as "sa[ying] that an employer suffers a loss in the amount of secret profits accepted by its agent and is entitled to restitution in that amount."). Given that these decisions are premised on treating bribes and kickbacks *as a loss to the victim*, these binding precedents are entirely consistent with the general rule that restitution under the MVRA is based on a victim's loss, not an offender's ill-gotten gains. *See United States v. Fu Sheng Kuo*, 620 F.3d 1158, 1165 (9th Cir. 2010) (holding that ill-gotten gains are not available under the MVRA); *see also United States v. Anderson*, 741 F.3d 938, 951 (9th Cir. 2013) (same).

Even if *Gamma Tech* required an employer to show a loss beyond the loss of the kickbacks (and it does not), Schoenfeld has *already admitted* that PG&E suffered such a loss. Specifically, Schoenfeld stated in his plea agreement that "[his] position is that *PG&E suffered a loss*." Dkt. No. 12 at 10 (emphasis added). Schoenfeld signed his plea agreement under an acknowledgement that he had "read this Plea Agreement and carefully reviewed every part of it with [his] attorney." *Id.* at 13. Given this clear admission of financial loss, Schoenfeld's current contention that his criminal scheme "actually saved PG&E money" is a bold reversal that the Court should not countenance. Dkt. No. 33 at 2; *see* Dkt. No. 10 (Minutes for Change of Plea Hearing).

Other admissions in Schoenfeld's plea agreement similarly underscore the fallacy of his current effort to reinvent history. While Schoenfeld now contends that the contracts with AAL

PG&E'S REPLY IN SUPPORT OF
SUBMISSION RE: RESTITUTION

- 3 -

Case No.: 20-CR-00150 KJM

were "mainly" based on competitive billing and the contract rate "went down over time," *id.* at 3, Schoenfeld already admitted to providing confidential, proprietary competitor rate information to his cousin over a period of seven years, and to more-than-doubling certain fees and increasing rates by as much as 23% without authorization seven months before he was terminated.[1]  *Id.* at A-1, A-2.  These admissions are consistent with the Ninth Circuit's observation that inflated charges are reasonably expected in kickback schemes because they help fund the criminal enterprise.  *Gamma Tech*, 265 F.3d at 928 ("[I]t is not unreasonable to assume that a natural result of paying kickbacks is inflation of the charges in order to make the scheme profitable for the payer of the kickbacks.").

At bottom, Schoenfeld's convenient misreading of *Gamma Tech* would reward an employee with the kickbacks he receives so long as he ensures his criminal scheme is a mutual "win" for him and his employer.[2]  But *Gamma Tech*'s treatment of kickbacks does not turn on the design of an offender's scheme; instead, its holding simply recognizes that kickback money belongs to the employer.  Thus, as in *Gamma Tech*, the proper remedy for PG&E's loss is to order "[Schoenfeld] to reimburse [PG&E] for the kickbacks he received."  265 F.3d at 929.

    **C.**    <u>**Schoenfeld's Cited Authorities Are Inapposite**</u>

Even though *Gamma Tech* is controlling Ninth Circuit precedent, Schoenfeld cites several California state-court decisions and out-of-circuit federal cases, all of which are unavailing.  With respect to California law, Schoenfeld essentially argues that *Gamma Tech* was wrongly decided because the state statute the Ninth Circuit cited in support of its holding applies only where accepting kickbacks are part of an employee's job duties.  *See* Dkt. No. 33 at 4.

---

[1] Schoenfeld also argues that his criminal conduct somehow benefited PG&E because his disclosure of competitor rate information to his cousin allowed AAL to submit bids that were the same or less than those competitors.  Dkt. No. 33 at 3.  Schoenfeld's argument, however, wrongly assumes that a competitive AAL bid would not have been *lower* than an AAL bid informed by competitor bid amounts.  It also ignores Schoenfeld's admitted actions in impermissibly increasing fees and rates after the contract was awarded.

[2] Schoenfeld also asserts, without explanation, that it is significant under *Gamma Tech* that he paid taxes on the kickbacks; that he spent money to set up an entity to disguise the payments; and that PG&E's money was routed through a payment vendor before being paid to AAL and then kicked back to Schoenfeld.  *See* Dkt. No. 33 at 2-3.  Nothing in *Gamma Tech*, however, suggests that such unremarkable facts would change its treatment of kickbacks.

This Court, of course, is bound by Ninth Circuit precedent regardless of Schoenfeld's criticism of that precedent.  In any event, Schoenfeld's cited authority in support of his theory provides no reason to believe *Gamma Tech* rests on a misreading of California law.  *See id.* at 3-5 (citing *Zahler v. Columbia Pictures Corp.*, 180 Cal. App. 2d 582 (1960) (interpreting a contract to permit television broadcast of deceased composer's work); *Burns v. Clark*, 133 Cal. 634 (1901) (holding that "the casual finding of gold by an employee in the course of an employment in no way related to such an object" does not trigger the statute); *Douglas v. Los Angeles Herald-Exam'r*, 50 Cal. App. 3d 449, 452 (1975) (holding, under a different statute, that an employer did not have a duty to defend an employee who was sued because he was "off on a frolic")).

Schoenfeld's reliance on contrary out-of-circuit federal authority does nothing to support his contentions.  If anything, those cases are consistent with *Gamma Tech* in that they recognize that restitution is based on a victim's loss, not an offender's ill-gotten gains.  *See* Dkt. No. 33 at 5-7 (citing *United States v. Kays*, 2020 WL 1929443, at *3-4 (D. Md. Apr. 20, 2020) (acknowledging *Gamma Tech*'s holding of kickbacks as loss and aptly noting one of its basis in California agency law); *United States v. Li*, 2019 WL 919545, at *5 (E.D.N.Y Feb. 24, 2019) (following Second Circuit authority in *United States v. Vinazzo*, 850 F.3d 94 (2nd Cir. 2017) in declining to apply agency principles to offender's receipt of bribes); *United States v. Guthrie*, 64 F.3d 1510 (10th Cir. 1995) (holding that restitution must be based on a victim's loss)).  Finally, Schoenfeld cites an Eleventh Circuit case that in fact *supports* treating kickbacks as loss.  *Id.* at 6 (citing *United States v. Vaghela*, 169 F.3d 729, 736 (11th Cir. 1999) (holding that "the amount of the loss for purposes of restitution . . . is equivalent to the amount [the offender] received in kickbacks")).

////
////
////
////
////
////

PG&E'S REPLY IN SUPPORT OF
SUBMISSION RE: RESTITUTION

- 5 -

Case No.: 20-CR-00150 KJM

## V. CONCLUSION

PG&E respectfully submits that for the reasons stated above, as well as in its opening submission in support of restitution, PG&E has met its burden to show it is entitled to $2,007,164.08 in restitution plus $133,557.24 in prejudgment interest, which together constitute a total restitution amount to PG&E of **$2,140,721.32**.

DATED: January 21, 2021        By:    */s/ Timothy J. Lucey*
                                                TIMOTHY J. LUCEY
                                                Attorney for
                                                PACIFIC GAS & ELECTRIC COMPANY